# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRANDON SCOZZARI,<br>*Plaintiff*,<br><br>v.<br><br>ANTONIO SANTIAGO *et al.*,<br>*Defendants*. | No. 3:19-cv-00229 (JAM) |

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Brandon Scozzari is in the custody of the Connecticut Department of Correction ("DOC") and confined at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against several DOC officials in their individual and official capacities, including Director of Security Antonio Santiago; Security Risk Group Coordinator John Aldi; Warden Stephen Faucher; Lieutenants Kelly, Paine, and Russell; Disciplinary Investigator Acevedo; Officer Irizarry; and one John Doe correctional officer. Doc. #1 at 1. Scozzari claims that defendants violated his constitutional rights by placing him in the DOC's security risk group program in violation of the First, Eighth, and Fourteenth Amendments. *Id.* at 24-26 (¶¶ 108-13). He seeks damages, as well as declaratory and injunctive relief. *Id.* at 27 (¶¶ 114-22). For the reasons stated below, I will dismiss Scozzari's complaint in part and reserve decision on the preliminary injunction pending responses from certain defendants.

### BACKGROUND

The following facts are alleged in the complaint and are accepted as true only for purposes of this ruling. In October of 2018, Scozzari was confined in the S Unit at New Haven Correctional Center ("NHCC"). Doc. #1 at 5 (¶ 1). In the final week of that month, Lieutenants

Paine and Russell, as well as Officer Irizarry and Officer Doe, approached Scozzari as he entered S Unit from the medical unit. *Ibid.* (¶ 2). Paine told him, "[Y]ou'r[e] new to the facility, since your family doesn't know that you'r[e] here I'll let you go back to the block (unit) [un]til[] Monday." *Ibid.* (¶ 3).

On a Friday, Scozzari was brought to the Lieutenant's Office where Paine asked him about allegedly being a gang member. *Id.* at 5-6 (¶ 4). Scozzari was questioned by Paine and others, who said he was a member of the Piru Bloods gang. *Id.* at 6 (¶ 5). Scozzari told them he was not a Piru Blood. *Ibid.* (¶ 6). Paine then stated, "[I]f you['re] not a gang member, then why did you put it on you [Facebook] page," and showed Scozzari a Facebook page on a screen. *Ibid.* (¶ 7). Scozzari told Paine he had no answer. *Ibid.* (¶ 8). Paine then responded "then we're designating you as a gang member." *Ibid.* (¶ 9). Scozzari told Paine "I'll be honest with you I put it up there because a friend of mine[] that passed away always put it on his page, so I put it up there in memory of him." *Ibid.* (¶ 10). When Scozzari told Paine that he did not know the meaning of what was written on the Facebook page, Paine said that he did not believe him. *Id.* at 9 (¶¶ 11-13). Paine then asked Scozzari if he wanted to make any statements. *Ibid.* (¶ 15). Scozzari said "yes" and started to write out "I am not a gang member" with a pen and paper Paine had provided—but before he could finish, Paine seized the paper from Scozzari, balled it up, and threw it in the trash. *Ibid.* (¶¶ 17-18). Paine told Scozzari he would return for him on Monday. *Ibid.* (¶ 17). Before leaving the office, Scozzari said that Paine had violated his rights, but Paine responded that there was no violation because "Facebook has an agreement with the [DOC]." *Ibid.* (¶¶ 19-20). Scozzari then returned to S Unit, and the following Monday, Paine came and took Scozzari to the restrictive housing unit. *Ibid.* (¶¶ 21-22).

When Scozzari arrived at the restrictive housing unit, he did not receive notice of the charges against him from Paine. *Id.* at 10 (¶ 24). He also did not receive a notice of charges from Investigator Acevedo. *Ibid.* (¶ 25). Scozzari waited in restrictive housing from October 31 to November 28, 2018. *Ibid.* (¶ 26). There, he wrote to Security Risk Group (SRG) Coordinator Aldi and Director of Security Santiago. *Ibid.* (¶ 27). He has not yet received a response. *Ibid.* (¶ 28).

Scozzari claims never to have received a classification hearing prior to being sent to Phase Three of the DOC's Security Risk Group (SRG) program at Corrigan, which he alleges to be "essentially administrative segregation." *Id.* at 10, 12 (¶¶ 26, 44). When he arrived at Corrigan, he met five to six inmates who had been designated because of their Facebook posts. *Ibid.* (¶ 29). Scozzari accuses Lieutenants Paine and Russell of "bamboozl[ing]" him and charging him with a false offense for practicing his right to free speech. *Id.* at 11 (¶ 32). While in the SRG program, he "came to the presumption" that Santiago and Aldi, who oversee the SRG program, were compelling their subordinates to designate inmates based on their social media pages in order to justify continued funding for the program. *Ibid.* (¶ 34).

In February 2019, Scozzari obtained his ticket history from his counselor, and learned that there was no disciplinary report for his Facebook post. *Id.* at 12 (¶ 41).

Scozzari alleges that he is subject to a number of conditions in the SRG program that he considers unfair and inhumane. *Id.* at 15 (¶ 52). In the SRG program, he does not receive good time credits, is allowed only three phone calls per day rather than the ordinary six allowed to other inmates, can only spend $40 in commissary while other inmates can spend $75 in commissary, and is not receiving any rehabilitative or educational programming. *Id.* at 15, 17 (¶¶ 53-56, 66-67). Commissary orders take an extra week to arrive, *id.* at 17 (¶ 65), there are no

congregational religious services, *ibid.* (¶ 68), and visitors are limited to immediate family, *ibid.* (¶ 69).

Scozzari alleges that inmates spend 22.5 hours per day in their cells and only receive 90 minutes of recreation time. *Id*. at 15 (¶ 58). The cells are unheated and have no hot water. *Id.* at 18 (¶¶ 73, 77). When a fight occurs, all inmates in the unit are kept on lockdown for 3-5 days, and are not allowed to receive a shower until the fourth day. *Id.* at 16 (¶ 60). From January 24 to January 28, 2019, Scozzari was unable to shower—so that when food was distributed on January 27, Scozzari vomited from the odor in his cell after only a few bites. *Ibid.* (¶¶ 61-62). Moreover, the January 26 cell cleanup was canceled due to the lockdown, so Scozzari was unable to clean the soiled inside of his cell toilet. *Ibid.* (¶ 63). Scozzari alleges that he is always cold, shivering, and suffering from a runny nose. *Id.* at 18 (¶ 74).

Scozzari has spoken to unnamed officers and lieutenants about his conditions of confinement. *Id.* at 16 (¶ 64). They have ignored him. *Ibid.*

Because he is in the SRG program, when Scozzari goes to court he must wear a white jumpsuit. *Id.* at 23 (¶ 101). This shows the court, which has not yet sentenced him, that he is a gang member. *Ibid.* (¶ 102-03). Had he remained in the general population, Scozzari would have been eligible for good time credit and possibly parole. *Ibid.* (¶ 103). At the time of filing of his complaint in this action, Scozzari was and remained a pre-trial detainee.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a

4

defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Scozzari claims that defendants violated his rights under the First and Fourteenth Amendments.[1] He alleges that Santiago and Aldi failed to respond to his requests about the conditions under which he is confined and "orchestrated their subordinates" to designate him to the SRG program because of his Facebook posts. *See* Doc. #1 at 24 (¶ 108). He claims that Faucher and Kelly are responsible for housing him in unconstitutional conditions of confinement, *ibid.* (¶ 109), and that Paine, Russell, Irizarry, and Doe illegally designated him as a gang member, while Acevedo failed to give him notice and a hearing before he was sent to administrative segregation, *id.* at 25-26 (¶¶ 110-12).

---

[1] Scozzari alleges that defendants also violated his Eighth Amendment rights in connection with his conditions of confinement. But because the Eighth Amendment governs the rights of sentenced prisoners while the Fourteenth Amendment governs the rights of pretrial detainees, *see Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017), I construe his complaint as meaning to state a claim under the Fourteenth Amendment.

*Official capacity claims for damages*

Because Scozzari seeks damages and sues all defendants in their individual and official capacities, I will dismiss his claims against all defendants insofar as he sues them for damages in their official capacities. The Eleventh Amendment prevents Scozzari from maintaining a suit for money damages against state employees in their official capacities, *see, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)—and so because all defendants work for the DOC, they are immune from a damages suit in their official capacities. Accordingly, all official-capacity damages claims against them are dismissed.

*First Amendment retaliation*

Scozzari claims that defendants Santiago, Aldi, Paine, Russell, Irizarry, Doe, and Acevedo violated his First Amendment rights when Lieutenant Paine relied on his Facebook post in designating him to restrictive housing and the SRG program. I understand these allegations to suggest that defendants engaged in retaliation against Scozzari because of his exercise of his First Amendment free speech rights.

In order to establish a claim for unlawful retaliation against First Amendment speech, a plaintiff must prove that he engaged in speech activity that is protected by the First Amendment and that a governmental defendant took adverse action against the plaintiff because of the plaintiff's protected speech activity. *See Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). A plaintiff must prove that he suffered an adverse action of sufficient magnitude that it would deter a similarly situated person of ordinary firmness from exercising his or her right to speech. *See Burns*, 890 F.3d at 93-94; *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012).

The Supreme Court has recognized a First Amendment interest in posting on social media. *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). While not every adverse action that a correctional officer takes against a prisoner is constitutionally cognizable, *see Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), placing an inmate in distinctly harsher conditions because of his protected speech activity is a sufficiently adverse action to support a retaliation claim. *See Hayes v. Santiago*, 2018 WL 5456494, at *3 (D. Conn. 2018). Although Paine told Scozzari that he suspected him of being a gang member, Scozzari does not allege that this was Paine's actual reason and, drawing every inference in Scozzari's favor, it is entirely possible that Paine's statements were pretextual. *See* Doc. #1 at 6, 9 (¶¶ 5-10, 11-17). I therefore conclude that Scozzari has stated a claim for First Amendment retaliation at this initial review stage.

Scozzari's First Amendment retaliation claim may proceed against Paine, Santiago, and Aldi in their individual capacities for damages. Damages liability under § 1983 requires the personal involvement of each individual held liable. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). Although Scozzari describes how Paine allegedly retaliated against him on the basis of his protected speech, the only other facts he alleges about how defendants participated in acts of First Amendment retaliation are that "Santiago and []Aldi are compelling their subordinates to illegally designate inmates based off their social media page." Doc. #1 at 11 (¶ 34). Still, it is sufficient for personal involvement that "the defendant created a policy or custom under which unconstitutional practices occurred," *Raspardo*, 770 F.3d at 116, and so construed liberally, Scozzari states a claim for damages against Santiago and Aldi at this stage.

*Procedural due process and administrative designation*

Scozzari alleges that Santiago, Aldi, Paine, Russell, Irizarry, Doe, and Acevedo violated his procedural due process rights when he was placed in administrative confinement as part of his SRG designation. The standard analysis for a procedural due process claim "proceeds in two steps: [A court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). The Second Circuit has observed that "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (*per curiam*). Scozzari alleges that he was placed in restrictive housing throughout November 2018, and has since been in what is "essentially administrative segregation" at Corrigan. Doc. #1 at 10, 12 (¶¶ 26, 44). I therefore read Scozzari's complaint to allege a deprivation of a liberty interest at this time.

Liberty restrictions on a pretrial detainee may not amount to punishment of the detainee, and a pretrial detainee who is placed in segregation for administrative or security reasons is entitled to some notice of the charges against him and an opportunity to present his views. *See Benjamin v. Fraser*, 264 F.3d 175, 188, 190 (2d Cir. 2001) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979), and *Hewitt v. Helms*, 459 U.S. 460 (1983)). Scozzari's complaint alleges that Paine asked him to explain a post on Facebook and generally asked him about the Piru Bloods, but appears to indicate that Paine did not actually give Scozzari a chance to plainly respond to the threat of being put in segregation for gang membership until he asked if Scozzari wanted to write a statement—at which point he interrupted Scozzari and threw the paper Scozzari was writing on into the trash. I will conclude at this early stage that Scozzari has stated a plausible claim that

Paine did not give him an opportunity to present his views once he had put Scozzari on notice of the charge against him, and so a procedural due process claim for damages may proceed against Paine.

Similarly, Scozzari alleges that Acevedo failed to provide him with a notice of charges, convene a classification hearing, or otherwise allow him a chance to express his views. Doc. #1 at 10, 26 (¶¶ 25, 112). While it appears from Acevedo's title that Acevedo's primary role is to handle *disciplinary* violations and not to address questions of *administrative* segregation, that Scozzari alleges Acevedo failed to convene a classification hearing for him is, construed liberally, sufficient to allege that Acevedo partook in failing to provide Scozzari with an opportunity to present his views as to administrative segregation.

Scozzari has not, however, alleged facts to suggest the personal involvement of any other defendants in his SRG placement. While he claims that Aldi and Santiago are compelling their subordinates to designate detainees based on their social media posts, he does not allege any facts to show they are doing so in a way that violates inmates' due process rights. *See id.* at 11 (¶ 34). Accordingly, I will allow Scozzari's procedural due process claim to proceed only against Paine and Acevedo in their individual capacities for damages.

*Conditions of confinement*

Scozzari alleges that defendants have subjected him to unconstitutional conditions of confinement at Corrigan. Substantive due process requires that restrictions on pretrial detainees be reasonably related to a legitimate governmental purpose such a facility security. *See Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017). Notwithstanding the formal scope of the restrictions on a pretrial detainee, pretrial detainees also have a Fourteenth Amendment right against treatment that is the result of deliberate indifference by prison officials

9

to their safety. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Such a claim requires first establishing a risk of harm that is objectively serious, and then establishing the defendant's deliberate indifference to that harm. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). "[T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. So while "[a] detainee must prove that at an official acted intentionally or recklessly, and not merely negligently," *id.* at 36, a pretrial detainee need not necessarily prove that the defendant-official was subjectively aware of the risk of harm the detainee faced.

Here, Scozzari alleges that he was subjected to in-cell confinement for several days at a time with unsanitary conditions and no heat, denied the ability to shower for days, limited in his ability to communicate with visitors and family, restricted in the religious services he could attend, denied outside recreation, and denied certain other privileges available to general population inmates. I conclude that for purposes of my initial review, these conditions combined are sufficient to allege an objectively serious deprivation of Scozzari's rights. And because many of these conditions are the result of Corrigan policies of which Corrigan Warden Faucher and Corrigan Lieutenant Kelly were presumably aware, I conclude that Scozzari has stated a claim for deliberate indifference against them both. Similarly, while some of the conditions imposed on Scozzari such as the amount of time spent in his cell might be reasonably related to a legitimate penal interest like security, it is not wholly clear at this stage how, for instance, constraining the

number of calls Scozzari may make, limiting his commissary budget relative to the general population, or failing to provide programming are reasonably related to the possibility he may have been a gang member. *See Almighty Supreme*, 876 F.3d at 58. Accordingly, Scozzari's due process claim may also proceed against Faucher and Kelly on the theory that he is subject to arbitrarily harsh conditions of confinement. Scozzari has not, however, described how any other individual defendants have participated in his alleged mistreatment at Corrigan. I will therefore limit Scozzari's claim for damages as to Faucher and Kelly.

### *Request for declaratory and injunctive relief*

Scozzari has requested declaratory and injunctive relief against defendants Santiago, Aldi, Faucher, and Kelly. Doc. #1 at 27 (¶¶ 117-18). A request for prospective relief is only cognizable if an ongoing constitutional violation is taking place, *see, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)), and so Scozzari's claims for injunctive relief may only proceed to the degree they allege he continues to be held in administrative segregation on an unconstitutional basis and in unconstitutional conditions. Accordingly, he may proceed on claims against Santiago and Aldi insofar as they have the power to remedy what he alleges to be his unconstitutional placement in administrative segregation, and against Santiago, Aldi, Faucher, and Kelly to the extent that they may remedy the allegedly unconstitutional conditions to which he is subjected at Corrigan. *See Ex parte Young*, 209 U.S. at 157 (defendant official must have some connection with enforcement of allegedly unconstitutional act). The Court will reserve decision on Scozzari's request for preliminary injunctive relief at this time, and the defendants sued in their official capacities shall respond to the request for a preliminary injunction as well as the complaint and address why the requested relief should not be granted.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1) Scozzari's First Amendment retaliation claim may proceed against defendants Paine, Santiago, and Aldi in their individual capacities for damages, and against Santiago and Aldi in their official capacities for declaratory and injunctive relief. Scozzari's Fourteenth Amendment procedural due process claim may proceed against Paine and Acevedo in their individual capacities for damages, and against Santiago and Aldi in their official capacities for declaratory and injunctive relief. Scozzari's Fourteenth Amendment conditions of confinement claims may proceed against Faucher and Kelly in their individual capacities for damages on the theories that Scozzari was subject to deliberate indifference to his health and safety and subject to unduly punitive conditions as a pretrial detainee, and his claim may proceed against Faucher, Kelly, Santiago, and Aldi in their official capacities for declaratory and injunctive relief on the same grounds. All other defendants to this action are DISMISSED without prejudice if Scozzari is unable to allege additional facts to show their involvement in depriving his constitutional rights in any amended complaint that must be filed by **May 29, 2019**.

(2) The Clerk shall prepare a summons form and send an official capacity service packet, including the complaint (Doc. #1), to the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendants Santiago, Aldi, Faucher, and Kelly in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, by **May 20, 2019**, and to file a return of service by **May 29, 2019**.

(3) The Clerk shall verify the current work addresses for Paine, Santiago, Aldi, Acevedo, Kelly, and Faucher with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint (Doc. #1) to those defendants in their individual

capacities at the confirmed addresses by **May 13, 2019**, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4) All defendants shall file their response to the complaint, either an answer or motion to dismiss, and, if applicable, their response to Scozzari's request for a preliminary injunction, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26-37, shall be completed by **October 26, 2019**. Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed by **November 25, 2019**.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Scozzari changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Scozzari must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put

the new address on a letter without indicating that it is a new address. If Scozzari has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Scozzari should also notify defendants or defense counsel of his new address.

It is so ordered.

Dated at New Haven this 29th day of April 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge