# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRANDON SCOZZARI,<br>　　　*Plaintiff*,<br><br>　　v.<br><br>ANTONIO SANTIAGO *et al.*,<br>　　　*Defendants*. | No. 3:19-cv-229 (JAM) |

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Brandon Scozzari filed this lawsuit *pro se* and *in forma pauperis* against several

Department of Correction ("DOC") officials, claiming that they violated his constitutional rights

while he was confined as a pretrial detainee. Scozzari principally alleges that he was subjected to

administrative segregation and placed in the DOC's Security Risk Group ("SRG") program—a

program that allows for detainees who are suspected of certain gang affiliations to be placed in

more restrictive conditions of confinement—in violation of the Fourteenth Amendment.[1] He

now seeks preliminary injunctive relief in connection with his claims, seeking an order removing

him from the SRG program and restoring him to general population. Doc. #20 at 1. For the

reasons set forth below, I will deny Scozzari's motion for preliminary injunctive relief.

### BACKGROUND

The following facts are derived from Scozzari's allegations in his complaint, as well as

the parties' new submissions related to the instant motion. Docs. #1, #39 (Declaration of

---

[1] *See* Connecticut State Department of Correction, Administrative Directive 6.14 (Security Risk Groups), available at https://portal.ct.gov/DOC/AD/AD-Chapter-6 (last accessed December 3, 2019) [https://perma.cc/DRH2-BNNF].

Scozzari), #28-1 (Affidavit of SRG Coordinator Captain Papoosha).[2] I further incorporate all facts relevant to this motion from my initial review order. Doc. #7.

In October of 2018, while Scozzari was confined as a pretrial detainee in the New Haven Correctional Center ("NHCC"), he was questioned by Lieutenants Paine and Russell about posts on his Facebook page indicating that he was a member of the "Piru Blood" gang. Docs. #1 at 5-6 (¶¶ 1-10); #39 at 1 (¶ 3). Scozzari denied any affiliation. Doc. #1 at 6 (¶ 6). Shortly thereafter, Paine came and took Scozzari to the restrictive housing unit. *Id*. at 9 (¶¶ 21-22). When Scozzari arrived at the restrictive housing unit at NHCC, he did not receive notice of the charges against him from Paine or from Investigator Acevedo, and he also was deprived of an opportunity to present his views "orally or in writing." *Id*. at 10 (¶¶ 24-25). Scozzari emphasizes that this segregation was not the result of committing any infractions or for disciplinary issues. Doc. #39 at 2 (¶ 4).

On October 31, 2018, while still at NHCC, Scozzari received an SRG member hearing notification, which informed him that he would have a hearing due to his possible affiliation with the Bloods, pointing to Scozzari's Facebook page, *id*. at 2 (¶ 5), and advised him that he was afforded an opportunity to have an advocate and witnesses at his hearing, an opportunity he declined, Doc. #28-1 at 3-4 (¶¶ 14-15).[3]

---

[2] Scozzari first filed a memorandum in support of his motion for preliminary injunction as well as a declaration in support. Doc. #38. Scozzari then filed an amended memorandum and declaration. Docs. #40, #39. Defendants have not lodged any objection to these amended submissions. For the purpose of this ruling, I will consider Scozzari's amended memorandum (Doc. #40) and the accompanying declaration (Doc. #39).

[3] The Bloods are designated as a SRG, along with the "subset Blood Piru." Doc. #28-1 at 3 (¶ 14). A.D. 6.14 provides that an inmate believed to be an SRG member shall have a hearing with notice thereof prior to a determination of SRG status. Doc. #28-1 at 2 (¶¶ 9-12). In his complaint, Scozzari originally claimed never to have received notice and a hearing in connection with his administrative segregation at NHCC and his placement in Phase Three of the SRG program at Corrigan. Doc. #1 at 10, 12-13 (¶¶ 25-29, 44). But now, based on Scozzari's own submissions, it appears that he did receive a notice of, and participate in, an SRG hearing while he was at NHCC.

At the SRG hearing, Scozzari acknowledged that the Facebook page was his. Doc. #39 at 2 (¶ 7); *see also* Doc. #28-1 at 4 (¶ 15). He said that he posted "what are lyrics to a song in memory of a friend who passed away." Doc. #39 at 2 (¶ 7). Scozzari denied posting a picture containing known gang hand symbols. *Ibid.* But defendants submit that the Facebook page stated, "1700 block 1700 shots IMG MOB PIRU," and it contained a photograph of Scozzari displaying a well-known Blood hand sign. Doc. #28-1 at 3 (¶ 14).[4] Scozzari again stresses that the SRG hearing was not the result of disciplinary reports. Doc. #39 at 2 (¶¶ 5-6).

After the SRG hearing, Scozzari received a Notification of Decision that he was designated as an SRG member Phase 3. Docs. #39 at 3 (¶ 10); #28-1 at 4 (¶ 16). Scozzari was then transferred to the Corrigan-Radgowski Correctional Center ("Corrigan"), where he entered into the SRG program in Phase 3. Docs. #39 at 3-4 (¶ 12); #28-1 at 4 (¶ 16).

Scozzari commenced this lawsuit in February 2019, claiming, *inter alia*, he was unconstitutionally placed in administrative segregation at NHCC and the SRG program at Corrigan. Doc. #1. Scozzari further claims he was kept under unconstitutional conditions of confinement at Corrigan. He seeks damages, as well as declaratory and injunctive relief. *Id.* at 27 (¶¶ 114-22).

In April 2019, Scozzari was sentenced. *See State v. Scozzari*, No. N07M-CR18-0297876-S (Conn. Super. Ct. April 3, 2019). Later that month, I permitted, *inter alia*, Scozzari's claims for injunctive relief under the Fourteenth Amendment against Aldi, Santiago, Faucher, and Kelly in their official capacities to proceed. Doc. #7 at 12.[5]

---

Docs. #39 at 2-3 (¶¶ 5-11), #40 at 2; *see also* Doc. #28-1 at 3 (¶ 14).

[4] Papoosha asserts that "IMG" stands for "Insane Mob Gang." Doc. #28-1 at 3 (¶ 14).

[5] Scozzari originally named DOC Director of Security Antonio Santiago; Security Risk Group Coordinator John

After my initial review order was issued, Scozzari received two Class A discipline reports that were "un-related to anything Security Risk Groups." Doc. #39 at 4 (¶ 15). Due to these infractions, Scozzari was regressed first to the beginning of SRG Phase 3 in April, then to Phase 2 in May. Doc. #28-1 at 4 (¶ 17). Scozzari was also transferred to MacDougall-Walker Correctional Institution ("MWCI"). Doc. #9 (Notice of Change of Address).

In June 2019, Scozzari received two more disciplinary reports, one of which was unrelated to the SRG program. Docs. #39 at 4-5 (¶ 16); #28-1 at 4 (¶ 18). The other infraction *was* SRG-related, based on the discovery that Scozzari sent a letter discussing Blood hierarchy and instructing that it be forwarded to a known Blood member. Doc. #28-1 at 4 (¶ 18). Scozzari also placed a phone call to this known Blood member and discussed the hierarchy of the Blood sect and associated information. *Ibid*. After both of these infractions, Scozzari's SRG status was reviewed, and he was further regressed to Phase 1. *Ibid*. (¶ 19). In July 2019, Scozzari was transferred to Northern Correctional Institution ("Northern"), where he is currently housed. Doc. #39 at 4-5 (¶16); *see also* Doc. #17 (Notice of Change of Address).[6]

In August 2019, Scozzari filed this motion for a preliminary injunction. Doc. #20. He seeks preliminary injunctive relief in connection with his Fourteenth Amendment claims, asking

---

Aldi; Warden Stephen Faucher; Lieutenants Kelly, Paine, and Russell; Disciplinary Investigator Acevedo; Officer Irizarry; and one John Doe correctional officer, all in their individual and official capacities. Doc. #1 at 1. In my initial review order, I dismissed all defendants except Paine, Santiago, Aldi, Acevedo, Faucher, and Kelly. Doc. #7 at 12. Along with his Fourteenth Amendment claims, I allowed Scozzari's First Amendment retaliation claim to proceed, for which he also seeks money damages, declaratory, and injunctive relief. Doc. #7 at 12.

[6] It appears from the record that Scozzari was not transferred directly from Corrigan to Northern. In May 2019, Scozzari filed a Notice of a Change of Address, in which he listed MWCI. Doc. #9. In July 2019, Scozzari filed a new Notice of a Change of Address, indicating that he had been transferred to Northern. Doc. #17. Since being transferred to Northern in July 2019, Scozzari has also filed several other notices that indicate that he was transferred to MWCI and back again to Northern. Docs. #34; #37.

for a court order removing him from the SRG program and reinstating him in general population. *Ibid.*[7]

<h2 style="text-align:center">DISCUSSION</h2>

A district court has wide discretion in determining whether to grant preliminary injunctive relief. *See Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) (Sotomayor, J.).[8] The requirements for the issuance of a preliminary injunction are well established. To obtain a preliminary injunction, a plaintiff must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.,* 696 F.3d 206, 215 (2d Cir. 2012) (internal quotations omitted).

The Second Circuit has cautioned that preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries

---

[7] In his motion for a preliminary injunction, Scozzari makes no express references to his First Amendment retaliation claim, focusing instead on obtaining an equitable remedy for the alleged deprivation of his liberty interest resulting from his administrative segregation and SRG classification. *See, e.g.*, Docs. #39 at 5 (¶ 18); #40 at 1 (seeking a preliminary injunction "to ensure that he receives the proper protections afforded to him under the law"). I therefore do not understand Scozzari to be requesting preliminary injunctive relief in connection with his First Amendment claim.

[8] A federal court ordinarily holds a hearing on a motion for preliminary injunction, but hearings are not required in all cases. *See Drywall Tapers & Pointers of Greater New York, Local 1974 of I.B.P.A.T., AFL–CIO v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n,* 954 F.2d 69, 76-77 (2d Cir. 1992). "[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997). As is relevant here, if the record before the Court demonstrates no factual dispute to be resolved by an evidentiary hearing, the Court may grant or deny the motion without hearing oral testimony. *Ibid.*; *Lopez v. McEwan*, 2009 WL 179815, at *1 (D. Conn. 2009). Accordingly, I have chosen not to hold a hearing on these preliminary injunction motions because, after reviewing the motions, memoranda, affidavits, and various other materials, there are no essential facts in dispute and I believe that testimony and argument would not be materially helpful to my understanding of the factual record or relevant legal principles. *See Stiggle v. Arnone*, 2014 WL 4230919, at *1 n.3 (D. Conn. 2014) (citing James W. Moore, et al., *Moore's Federal Practice* ¶ 65.04[3] (2d ed. 1995)).

the burden of persuasion." *Moore,* 409 F.3d at 510 (citation and internal quotation marks omitted). "In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 738 (D. Conn. 2018) (internal citations omitted).

Further, when a movant seeks a "mandatory preliminary injunction that alters the status quo by commanding some positive act," rather than a "prohibitory injunction seeking only to maintain the status quo," then the burden of proof is even greater. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (internal quotation marks and citation omitted). A mandatory injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Ibid.* A party seeking a mandatory injunction must therefore demonstrate "a substantial likelihood of success" on the merits, in addition to a showing of irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 473-74 (2d Cir. 1996).

### *Likelihood of success on the merits*

I will first address Scozzari's likelihood of success on the merits of his Fourteenth Amendment claims. By seeking an order requiring defendants to remove him from the SRG program and place him back in the general population, Scozzari seeks to *alter*, not maintain, the status quo during the ongoing litigation. Accordingly, Scozzari must meet the higher burden of proof for a mandatory injunction and demonstrate a *substantial* likelihood of success on the merits of his due process claims for injunctive relief.

1. Procedural Due Process

In his complaint, Scozzari alleges his due process rights were violated when he was placed in the restrictive housing unit at NHCC and in the SRG program at Corrigan without adequate process, which he describes as "essentially administrative segregation," and he seeks injunctive relief. Doc. #1 at 9-10, 12-13 (¶¶ 22-26, 40-48). In my initial review order, I read Scozzari's complaint as alleging a deprivation of a protected liberty interest, which triggers a right to procedural due process, while he was a pretrial detainee. *See* Doc. #7 at 8.[9]

The standard analysis for a procedural due process claim "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). Liberty restrictions on a pretrial detainee may not amount to punishment of the detainee, and a pretrial detainee who is placed in segregation for administrative reasons is entitled to "some notice of the charges against him and an opportunity to present his views." *See Benjamin v. Fraser*, 264 F.3d 175, 188, 190 (2d Cir. 2001) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979) and *Hewitt v. Helms*, 459 U.S. 460 (1983)). These procedural steps "must occur within a reasonable time following an inmate's transfer." *Taylor v. Comm'r of New York City Dep't of Corr.*, 317 F. App'x 80, 82 (2d Cir. 2009) (quoting *Hewitt*, 459 U.S. at 476 & n.8).

---

[9] Defendants take the position in a footnote that because Scozzari was sentenced on April 3, 2019, this Court should analyze his claims on this motion "in accordance with his status as a sentenced inmate." Doc. #28 at 1 n.1. But the events of which Scozzari complains—inadequate process in connection with his placement in administrative segregation at NHCC and in the SRG program at Corrigan—all occurred while he was a pretrial detainee, prior to when he commenced this lawsuit in February 2019.

Scozzari challenges his placement in administrative segregation and the SRG program as lacking due process. In my initial review order, I permitted Scozzari's procedural due process claim to proceed on the basis of Scozzari's allegations that he did *not* receive any notice or hearing (or other opportunity to present his views).[10] Indeed, from his complaint it appeared that Scozzari was improperly deprived of receiving some notice of the charges against him and an opportunity to present his views as to the Facebook page that was the basis for his administrative segregation and his placement into the SRG program. Doc. #7 at 8-9; *see also Benjamin*, 264 F.3d at 190.

Now Scozzari admits that he *was* given notice and an opportunity to present his views at a SRG hearing shortly after he was placed in administrative segregation at NHCC and before he was placed as Phase 3 in the SRG program at Corrigan. Indeed, in his own submissions for this motion, Scozzari acknowledges that he received an SRG hearing notification one day after being placed in administrative segregation at NHCC. Doc. #39 at 2 (¶¶ 4-5). Scozzari concedes that the notification informed him the SRG hearing was due to his apparent affiliation with the Bloods (as indiciated by his Facebook page), *ibid.* (¶ 5), and defendants submit that the notification advised Scozzari that he could have an advocate and witnesses at his hearing, which he declined, Doc. #28-1 at 3-4 (¶¶ 14-15). Scozzari also concedes that he had an opportunity at that SRG hearing to present his views: he acknowledged that the Facebook page was his, but he denied any affiliation with the Bloods. Doc. #39 at 2-3 (¶ 7); *see also* #28-1 at 4 (¶ 15). Scozzari further appears to acknowledge that it was only *after* that SRG hearing that he received a Notification of

---

[10] Doc. #7 at 8-9 (discussing how the complaint indicated that "Paine did not actually give Scozzari a chance to plainly respond to the threat of being put in segregation for gang membership" and that "Acevedo partook in failing to provide Scozzari with an opportunity to present his views as to administrative segregation.").

Decision that he was designated as an SRG member Phase 3. Doc. #39 at 3 (¶ 10); *see also* Doc. #28-1 at 4 (¶ 16).

In light of the foregoing, Scozzari is hard-pressed to successfully show that prison officials denied him "some notice of the charges against him and an opportunity to present his views" after he was placed in administrative segregation and before he formally received his SRG classification, as is required for procedural due process for a pretrial detainee whose protected liberty interest is implicated. *See Benjamin*, 264 F.3d at 188.[11] In short, Scozzari now appears to concede that his segregation was administrative in nature, and that he received the requisite minimal procedures within a reasonable time of his initial confinement. I therefore conclude on the basis of this record that Scozzari has not shown the requisite substantial likelihood of success on the merits of his Fourteenth Amendment procedural due process claim for injunctive relief, as is required for a mandatory preliminary injunction.[12]

2. Substantive Due Process

In his complaint, Scozzari also challenges his conditions of confinement at Corrigan, seeking injunctive relief. Doc. #1 at 15-19 (¶¶ 52-83).

---

[11] Further underscoring this conclusion is the fact that Scozzari's own submissions repeatedly stress that the administrative segregation was not for disciplinary reasons, which tends to belie any suggestion that the actions taken against him were punitive in nature, which would potentially alter the procedural due process analysis. *See, e.g.*, Doc. #39 at 2 (¶¶ 4-7). Defendants' submission also gives no suggestion that there was a punitive motive for placing Scozzari in the SRG program. *See* Doc. # 28-1 at 2, 3-4 (¶¶ 8, 14-16).

[12] Nor has Scozzari demonstrated "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward [him]." *Christian Louboutin S.A.*, 696 F.3d at 215. As noted above, the facts material to Scozzari's procedural due process claim are not disputed. Both parties' submissions in relation to the preliminary injunction motion acknowledge that Scozzari received notice, an opportunity to present his views at a hearing, and a notification of decision shortly after he was placed in administrative segregation at NHCC and before he was transferred to the SRG program at Corrigan.

As an initial matter, because Scozzari focuses on the alleged lack of notice and hearing throughout his submissions in support of an order restoring him to general population, I understand him to be seeking preliminary equitable relief in connection with his procedural due process claim. Nevertheless, in accordance with principles of liberal construction afforded to submissions from *pro se* litigants, I will construe Scozzari's motion as also seeking preliminary injunctive relief in connection with his substantive due process claim for his conditions of confinement.[13]

Substantive due process requires that restrictions on pretrial detainees be reasonably related to a legitimate governmental purpose, such as facility security. *See Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017). Pretrial detainees also have a Fourteenth Amendment right against unconstitutional conditions of confinement or treatment that is the result of deliberate indifference by prison officials to their safety. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To prevail on such a claim, a plaintiff must first establish a risk of harm that is objectively serious, and then establish the defendant's deliberate indifference to that harm. *See ibid; cf. Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).

In addition, a court may enter an order of prospective injunctive relief against a state official in his official capacity only if that state official is engaged in an ongoing violation of the plaintiff's constitutional rights. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). It is for this reason that a prisoner's transfer from one correctional facility to another generally moots his claims for

---

[13] Again, defendants argue that Scozzari's current status as a sentenced prisoner should alter this Court's analysis. Doc. #28 at 1 n.1. But, as I explain below, since I conclude that Scozzari's transfer from Corrigan would moot his claim for injunctive relief based on conditions of confinement at that prior facility, that Scozzari is now a sentenced prisoner has no bearing on that outcome.

prospective injunctive relief against correctional staff at that facility or for conditions of confinement at a particular correctional institution. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2011); *Pagan v. Pafumi*, 2013 WL 2244353, at *1 (D. Conn. 2013) (concluding that "[plaintiff's] request for injunctive relief pertaining to conditions of confinement at Northern is moot" after he was transferred to MWCI). And if the underlying claim for injunctive relief is moot, a preliminary injunction motion is properly denied. *See, e.g.*, *Davidson v. Kelly,* 100 F.3d 945 (2d Cir. 1996) (preliminary injunction motion properly denied as moot when prisoner who had sought change of conditions at his prison facility was transferred to a different facility) (unpublished disposition).

Scozzari claims that he was subjected to unconstitutional conditions of confinement at Corrigan. In my initial review order, I determined that Scozzari had stated a substantive due process claim for deliberate indifference to his conditions of confinement. Doc. #7 at 10. I therefore permitted Scozzari's claims for injunctive relief on this basis to proceed against Aldi, Santiago, Faucher, and Kelly to the extent that "he continues to be held . . . in unconstitutional conditions" and to the extent that those defendants "may remedy the allegedly unconstitutional conditions to which he is subjected at Corrigan." *Id*. at 11.

But as noted above, Scozzari is no longer housed at Corrigan, which means he is no longer being held under the allegedly unconstitutional conditions of which he originally complained. Accordingly, because Scozzari was transferred from Corrigan, he can no longer maintain a substantive due process claim for injunctive relief arising from his prior conditions of confinement at that facility. I therefore conclude that Scozzari cannot show a substantial

likelihood of success on the merits of his substantive due process claim, as is required for a mandatory preliminary injunction.

### *Irreparable harm*

To satisfy the irreparable harm requirement, a plaintiff must demonstrate that absent a preliminary injunction, he "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enterprise Six Nations Ltd. v. Pryor,* 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks and citations omitted). Because I conclude that Scozzari has not demonstrated a substantial likelihood of success on the merits of either his procedural due process or his substantive due process claim for injunctive relief, thereby precluding entry of a preliminary injunction, I conclude that I need not address the question of irreparable harm at this time.

### CONCLUSION

For the foregoing reasons, I will DENY Scozzari's motion for a preliminary injunction with prejudice (Doc. #20). It is so ordered.

Dated at New Haven this 9th day of December 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge